UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CALENTURE, LLC, and
REVIVE INVESTING LLC,

                    Plaintiffs,

                                                 21-cv-402 (PKC)

          -against-                       OPINION AND ORDER


KAREN J. PULTE and
MARK T. PULTE,
as Co-Trustees of the William J. Pulte Trust
dtd 01/26/1990, as amended,

                    Defendants,

          -and-

PULTEGROUP, INC.,

                    Nominal Defendant.

------------------------------------------------------------x

CASTEL, U.S.D.J.

          Plaintiffs Calenture, LLC and Revive Investing LCC bring this action for

disgorgement under section 16(b) of the Securities Exchange Act of 1934 against defendants

Karen J. Pulte and Mark T. Pulte (collectively, the "Trustees"), the trustees of the William J.

Pulte Trust (the "Trust").   The Amended Complaint alleges that the Trust traded the common

stock of PulteGroup, Inc. ("PulteGroup" or the "Company") while functioning as a director of

PulteGroup through the Trust's alleged deputy, William J. Pulte, Jr.

          The parties do not dispute that under certain circumstances a person or entity, not

duly elected as a director, may be deemed a director of a corporation for the purposes of section

16(b).  The Trustees deny that William Pulte, Jr. was their deputized representative on the

PulteGroup board and move to dismiss the action for failure to state a claim for relief, Rule

12(b)(6), Fed. R. Civ. P.  For reasons to be explained, the motion will be denied.


BACKGROUND

For purposes of the motion, the Court accepts the Complaint's well-pleaded

allegations as true and draws all reasonable inferences in favor of the non-movant Plaintiffs.  See

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d

Cir. 2007).

William J. Pulte (the "Elder Pulte") was the founder of PulteGroup, a publicly

traded company in the business of homebuilding and real estate development.  (Compl't ¶ 13.)

In 1990, the Elder Pulte settled the Trust and was its sole trustee until his death in 2018, after

which his wife, Karen Pulte, and son, Mark Pulte, succeeded him as co-trustees.  (Id.)  William J.

Pulte, Jr. (the "Younger Pulte") is the Elder Pulte's grandson and is the son of Mark Pulte and

step-grandson of Karen Pulte.  (Id. ¶ 14.)

Simultaneous with his service as trustee of the Trust, the Elder Pulte led

PulteGroup in a variety of capacities, including as a member of the board of directors, until his

retirement in 2010.  (Id. ¶ 16.)  Even after his retirement, the Elder Pulte continued to exert

influence over PulteGroup, in part due to his ownership of more than 8% of PulteGroup's shares.

(Id. ¶ 20.)  In 2015, this influence included lobbying for the appointment of James Grosfeld, a

PulteGroup executive from 1974 to 1990, to the board of directors.  (Id. ¶¶ 22–25.)  On

December 2, 2015, Grosfeld was appointed as a new director of PulteGroup, allegedly due to the

influence of the Elder Pulte.  (Id. ¶¶ 26, 29.)  The Complaint alleges that PulteGroup's then-

CEO, Richard Dugas, believed that Grosfeld was appointed as a direct result of the Elder Pulte's demands to the board.  (Id. ¶ 28.)

The Complaint further alleges that in January 2016, the Elder Pulte began a plan to remove then-CEO Dugas and add the Younger Pulte to the board of directors.  (Id. ¶ 31.)  That month, the Elder Pulte allegedly met with the Younger Pulte, Grosfeld and a former PulteGroup employee to discuss the former employee replacing Dugas as CEO.  (Id. ¶¶ 31–32.)  Dugas announced on April 4, 2016 that he would resign as CEO effective May 2017.  (Id. ¶ 35.)  To expedite the resignation, the Complaint alleges that over the following few months the Elder Pulte, the Younger Pulte and Grosfeld gave interviews, issued press releases, and made television appearances calling for Dugas's immediate resignation.  (Id. ¶ 36–37.)  On April 12, 2016, Grosfeld announced his resignation from the board.  (Id. ¶ 38.)  The following week, the Elder Pulte sent an open letter to shareholders which demanded the immediate resignation of Dugas, the resignation of director Jim Postl, and the appointment of "direct shareholder representatives" to the board to replace Dugas and Postl.  (Id. ¶¶ 38–39.)  On July 21, 2016, PulteGroup announced the appointment of three new independent directors.  (Id. ¶ 41.)

On September 8, 2016, Dugas resigned as CEO effective immediately, and that same day PulteGroup announced that the Younger Pulte would be appointed to fill a newly created board seat.  (Id. ¶ 43–44.)  The Younger Pulte had no homebuilding experience and was only 28 years old, but the Complaint alleges that "PulteGroup appointed [the Younger Pulte] because the Elder Pulte, in his capacity as trustee of the Pulte Trust, wanted a family representative on the board."  (Id. ¶¶ 45–46, 60.)  The Younger Pulte's appointment was made pursuant to an agreement between PulteGroup and the Elder and Younger Pultes, referred to as the "Settlement Agreement."  (Id. ¶ 47.)  The Trust was also party to the Settlement Agreement,

and the Elder Pulte executed the Settlement Agreement both in his personal capacity and as trustee of the Trust.  (Id. ¶ 48.)

The Complaint alleges that the Settlement Agreement obligated PulteGroup to appoint the Younger Pulte to the board and also appoint him to at least two board committees. (Id. ¶¶ 51–52.)  Further, the Settlement Agreement gave the Trust the right to propose a replacement candidate for the Younger Pulte in the event he was unable or unwilling to serve on the board, and subject to narrow exceptions PulteGroup was obligated to appoint the Trust's proposed replacement.  (Id. ¶ 53.)  In exchange for this board seat, the Trust "agreed to cause all of its PulteGroup common shares to be counted at any meeting of PulteGroup's shareholders and to be voted against any director nominees not nominated by the board."  (Id. ¶ 54.)  The Trust also agreed to vote in accordance with the board's recommendations on most other matters submitted to the shareholders and to refrain from engaging in or assisting any hostile proxy solicitation.  (Id.)  Provided that the Pulte family maintained a threshold level of PulteGroup shares, the Settlement Agreement was to remain in force as long as the Younger Pulte or his replacement sat on the board.  (Id. ¶ 55–56.)

The day after the signing of the Settlement Agreement, the Elder Pulte issued a press release through his attorneys stating that he had "reache[d] [an] agreement for board representation at PulteGroup."  (Id. ¶ 59.)  The Complaint also alleges that the Younger Pulte's appointment was meant to satisfy the Elder Pulte's request, originally related to Grosfeld, that he have "a representative on PulteGroup's board."  (Id. ¶ 58.)  The Younger Pulte remained on the board and the Settlement Agreement remained in force until May 7, 2020, when he departed without replacement.  (Id. ¶ 57.)

The Complaint alleges that between November 2018 and January 2019, while the Younger Pulte sat on the PulteGroup board, the Trust made several "short swing" trades in PulteGroup's equity securities.  (Id. ¶¶ 63–68.)  The Complaint calculates that in total, the Trust realized a profit of approximately $1.75 million from these trades.  (Id. ¶ 69.)  A demand for recovery of the Trust's alleged short swing profits was made on PulteGroup by a shareholder on January 24, 2019, and that demand was rejected on March 25, 2019.  (Id. ¶¶ 70–71.)

DISCUSSION

A.  Legal Standard for a Motion to Dismiss.

The Trustees move to dismiss the Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Legal conclusions, however, are not entitled to the presumption of truth.  Iqbal, 556 U.S. at 678. The Court, when considering a motion to dismiss, must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.  A sufficient complaint must include non-conclusory factual allegations that move its claims "across the line from conceivable to plausible."  Id. at 680.  In addition to the well-pleaded allegations in a complaint, a court may consider on a motion to dismiss "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

B.  Section 16(b) Director Liability for a Person or Entity
    Who Functions as a Director.

Section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act")

requires that so-called "short swing" profits realized by a "statutory insider" be disgorged and

returned to the issuer.  Credit Suisse Sec. (USA) LLC v. Simmonds, 566 U.S. 221, 223 (2012).

To state a claim under section 16(b) of the Act, a complaint must plausibly allege (1) a purchase

and (2) sale of equity securities (3) within a period of less than six months (4) by a statutory

insider (i.e., a director or officer of the issuer or any 10% beneficial owner of any registered class

of the issuer's equity securities).  Olagues v. Perceptive Advisors LLC, 902 F.3d 121, 125 (2d

Cir. 2018).  The only element at issue is whether the Trust was a statutory "director" of

PulteGroup who acted through a deputy, the Younger Pulte, who was indisputably an elected

member of the PulteGroup board of directors.

The Exchange Act defines a "director" to include not only a duly elected director,

but also "any person performing similar functions with respect to any organization . . . . " 15

U.S.C. § 78c(a)(7).  In Blau v. Lehman, 368 U.S. 403, 409 (1962), the Supreme Court held that

an individual or entity not formally named as a director "could for purposes of [section 16(b)] be

a 'director' . . . and function through a deputy."  The Court in Blau opined that an entity not

formally named as director could nonetheless be treated as a director for purposes of section

16(b) "if . . . [the entity] actually functioned as a director through [the deputy], who had been

deputized by [the entity] to perform a director's duties not for himself but for [the entity]."  Id. at

410.  The Second Circuit has noted that "the SEC has recognized that under the deputization

theory 'a corporation, partnership, trust or other person can be deemed a director for purposes of

section 16 where it has expressly or impliedly 'deputized' an individual to serve as its

representative on a company's board of directors'." <u>Roth ex rel. Beacon Power Corp. v. Perseus L.L.C.</u>, 522 F.3d 242, 246 (2d Cir. 2008) (internal citations omitted).

Under Second Circuit precedent, "deputization is a question of fact to be settled case by case and not a conclusion of law . . . . " <u>Feder v. Martin Marietta Corp.</u>, 406 F.2d 260, 263 (2d Cir. 1969). The Circuit found deputization in <u>Feder</u> for reasons including that "[the director's] control over [the shareholding entity's] investments, coupled with his position on the Board of Directors . . . placed him in a position where he could acquire inside information concerning [the issuer] and could utilize such data for [the shareholding entity's] benefit without disclosing this information to any other [shareholding entity] personnel" and because the record indicated that the "[shareholding entity] may have benefited, or intended to benefit, from [the director's] association with [the issuer]." <u>Id.</u> at 264.

Further guidance from the Circuit on the applicable standard to determine whether deputization has occurred is limited, as are district court cases that have fully litigated the issue. Plaintiffs note in their brief in opposition to the motion that a leading section 16 treatise distills from the history of case law a summary of five factors to consider in determining whether deputization has occurred. The Court sets forth those five factors here for consideration:

1. Whether the shareholding entity recommended the director for election or appointment to the board;

2. Whether the shareholding entity recommended the director for the purpose of protecting or representing the entity's interests rather than for the purpose of guiding or enhancing the issuer's business activities;

3. Whether the director regularly gained access to material nonpublic information about the issuer;

4. Whether the director shared the confidential information with the shareholding entity; and

- 7 -

5.   Whether the shareholding entity used the information to inform its investment strategy regarding the issuer's securities.

See Peter J. Romeo & Alan L. Dye, Section 16 Treatise and Reporting Guide, 229–30 (5th ed. 2019).

C.   The Complaint Plausibly Alleges that Trust Was a "Director" of PulteGroup Acting Through its Deputy, the Younger Pulte.

The Trustees argue that section 16(b)'s elements are not satisfied because the Complaint does not plausibly allege that the Trust became a "statutory insider" by virtue of the Younger Pulte's position on the board of directors (i.e., the Younger Pulte was not the Trust's deputy).  To support this claim, the Trustees advance two arguments: (1) there was no deputization of the Younger Pulte because he did not play an active role in the affairs of the Trust, and (2) the Trust was insulated from section 16(b) liability due to certain terms of the Settlement Agreement that the Trustees claim prohibited the Younger Pulte from sharing confidential information about the Company with the Trust.  As will be explained, neither argument is persuasive and the Trustees' motion to dismiss the Complaint will be denied.

The Trustees argue first that the Younger Pulte cannot be considered the Trust's deputy on the board because the Younger Pulte did not have control over the investment decisions of the Trust.  To support this argument, the Trustees focus on dictum from Feder in which the court noted that the director was "ultimately responsible for the total operation of the [shareholding investment firm] including personal approval of all the firm's financial investments" and had "control over [the shareholding investment firm's] investments[.]" 406 F.2d at 264.

While a close relationship between the putative deputy and the putative statutory director is among the factual circumstances considered to determine deputization, the Trustees

overstate the import of <u>Feder</u>'s discussion of the elected director's control over the shareholding investment firm. <u>Feder</u> holds that "deputization is a question of fact to be settled case by case and not a conclusion of law . . . . " 406 F.2d at 263. Thus, determining whether a serving director has been deputized by an outside shareholding entity requires consideration of several factual matters, of which the director's control over the shareholding entity is merely one. The Court can identify no principled reason why the putative deputy's direct, personal involvement in the putative statutory director's investment decisions would be essential to a finding on deputization.

The Complaint plausibly alleges that the Younger Pulte sat on the PulteGroup board at the behest and direction of the Trust. The Settlement Agreement was reached between PulteGroup and the Elder Pulte as trustee of the Trust and individually. (Doc 1, Ex. B at 20.) He separately executed the agreement in each capacity. (<u>Id.</u>) It provided for the expansion of the board and a commitment by the Company to nominate the Younger Pulte, who is identified by name, as a director. (<u>Id.</u> ¶ 1.) The Company agreed to support the Younger Pulte "in a manner no less rigorous and favorable than the manner in which the Company supports its other director nominees." (<u>Id.</u>) If for some reason the Younger Pulte resigned from the Board, the Company, subject to fiduciary and regulatory carve-outs and minimum shareholdings by the Trust and the Elder Pulte, agreed to support the replacement candidate of the Elder Pulte, acting as trustee and individually. (<u>Id.</u> ¶ 2.) The Settlement Agreement required the Company to appoint the Younger Pulte to two board committees. (<u>Id.</u> ¶ 3.)

The Complaint further alleges that the Younger Pulte was involved in the Trust's operations during the Elder Pulte's time as trustee by, for example, consulting with the Elder Pulte regarding changing the name of PulteGroup (Compl't ¶ 34), meeting with the Elder Pulte

and PulteGroup officials (Id. ¶ 32) and participating in a media campaign against then-CEO

Dugas at the behest of the Elder Pulte (Id. ¶¶ 36–37).  The Complaint also alleges that Grosfeld

shared information regarding Company management with the Elder Pulte during Grosfeld's time

as director, and that the Younger Pulte's appointment to the board was a continuation of

Grosfeld's role as the Trust's board representative (Id. ¶¶ 24–26, 29, 30, 32, 46, 58, 59) – this

leads to the inference that the Younger Pulte also shared information with the Elder Pulte and the

Trust while serving as a director.  And, of course, the familial relationship between the Younger

Pulte and the Elder Pulte and the successor Trustees, who were the Younger Pulte's father and

step-grandmother, leads to the inference that the Younger Pulte was heavily interested in the

Trust and its investment success.

      The Trustees seek to draw comfort from Section 5 of the Settlement Agreement,

which states that the Younger Pulte will be subject to:

> " . . . the same protections and obligations regarding confidentiality, conflicts of
> interest, fiduciary duties, trading and disclosure and other governance guidelines
> and policies (collectively, "Company Policies"), and shall be required to preserve
> the confidentiality of the Company's business and information, including
> discussions or matters considered in or for meetings of the Board or related
> thereto . . . [and] shall not share any reports, meeting materials, notices, draft
> minutes or other materials or information received by him in his capacity as a
> member of the Board with any of the other Pulte Parties or any of their respective
> Affiliates."  (Doc 1, Ex. B ¶ 5.)

      The fact that the Younger Pulte was contractually barred from disclosing material

nonpublic information on the Company does not insulate the Trust from liability.  Section 16(b)

imposes strict liability on a statutory director and it relieves the plaintiff of the burden of proving

that the statutory director in fact traded on material nonpublic information.  See Steel Partners II,

L.P. v. Bell Industries, Inc., 315 F.3d 120, 123 (2d Cir. 2002).  Trading on material nonpublic

information by a statutory insider may breach a fiduciary and contractual duty, yet it is not an uncommon occurrence.

Notably, the Settlement Agreement expressly allowed the Trust to obtain information from the Company's board subject to restrictions:

> " . . . the Pulte Parties and their Affiliates may communicate privately with the Board so long as such statements would not reasonably be expected to require any of the Pulte Parties to file or amend any Schedule 13D with the SEC and would not reasonably be expected to require a public announcement or disclosure regarding any such matter."  (Id. ¶ 8(a).)

> "The Pulte Parties hereby agree that (i) any confidential or proprietary information of the Company that they or their Affiliates obtain in discussions with the Company, its Affiliates or any of their respective representatives shall be kept confidential, shall be used solely for the purpose of monitoring and evaluating their investments in the Company and shall not be used to make Disparaging Statements . . . . "  (Id. ¶ 8(c).)

Whether a director, elected or statutory, contractually pledged to utilize the information received for nothing more than "monitoring and evaluating" purposes does not insulate the director from section 16(b) liability.

Reviewing the allegations of the Complaint in its entirety, it plausibly and amply alleges that the Trust deputized the Younger Pulte to sit as its representative on the Pulte Group board.  (Compl't ¶ 74.)  At the pleading stage, this is sufficient factual support for the assertion that the Trust is deemed to fall within the definition of a "director" under section 16(b) and its definitional section, 15 U.S.C. § 78c(a)(7).

CONCLUSION

        Defendants' motion to dismiss the Complaint is DENIED.  The Clerk is respectfully directed to terminate Doc 18.


        SO ORDERED.


                                            P. Kevin Castel
                                United States District Judge

Dated: New York, New York
       March 29, 2022